UNITED STATES BANKRUPTCY COURT <u>**NOT FOR PUBLICATION**</u>
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In Re:

                                      Chapter 7

BALCO EQUITIES LTD, INC.,                  Case No.: 04-35777 (CGM)
HADDON HOLDINGS LTD.,                 (Jointly Administered)
SARAH ENTERPRISES
INTERNATIONAL LTD.

                           Debtors.
------------------------------------------------------------------X
PAUL L. BANNER, TRUSTEE,

                         Plaintiff,

        - against -                       Adv. Proc. 05-09005 (CGM)

ANTONINA GIBNEY-CAMPBELL,
Executrix of the Estate of Frederic J.
Warmers; and WARMERS CONSTRUCTION
CORPORATION,

                      Defendants,

HUDSON UNITED BANK,

                    Intervenor-Defendant
------------------------------------------------------------------X

## <u>**A P P E A R A N C E S**</u>

Mark D. Glastetter                            Michael J. Matsler
Deiley, Mooney & Glastetter, LLP       Rider, Weiner, Frankel & Calhelha, P.C.
8 Thurlow Terrace                            655 Little Britain Road
Albany, New York                          New Windsor, New York
*Attorneys for Chapter 7 Trustee,*       *Attorneys for Antonina Gibney-Campbell as*
*Paul L. Banner*                            *Executrix of the Estate of Frederic J.*
                                          *Warmers; and Warmers Construction Corp.*

Kevin J. Licciardi
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey
*Attorneys for Hudson United Bank*

**MEMORANDUM DECISION DENYING MOTIONS
FOR SUMMARY JUDGMENT AND LIMITING ISSUES AT TRIAL**

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Chapter 7 Trustee Paul Banner (the "Trustee") is holding $1,500,000, proceeds of a sale of real

property (the "New Windsor Property") sold pursuant to this Court's decision and order dated March 17,

2005 (Chapter 7 Case No. 04-35777, ECF Docket Nos. 318 and 300, respectively). Two parties, (1)

Hudson United Bank ("Hudson" or "HUB") and (2) Antonina Gibney-Campbell, executrix of the

Warmers Estate and Warmers Construction Corporation (collectively, "Warmers") assert mortgages

against the proceeds New Windsor Property, and if valid, those mortgages attach to the proceeds of sale.

Warmers filed a proof of claim for $1,420,000 based on its alleged mortgage interest in the New

Windsor Property. On February 2, 2005, the Trustee commenced an adversary proceeding against

Warmers, seeking to avoid Warmers' mortgage on the New Windsor Property pursuant to 11 U.S.C. §

544(a)(3)[1] and objecting to Warmers' proof of claim. The Trustee claims that Warmers' mortgage is

invalid because (1) no action was brought upon the mortgage within six years of its maturity, as required

by New York Law, or (2) the mortgage is deemed discharged as a consequence of the dismissal of the

foreclosure action.

The Warmers Defendants filed an answer and counterclaims, including (1) a claim to impose a

constructive trust on the New Windsor Property (2) "wrongful conversion" of the New Windsor

Property and (3) seeking a declaration that Warmers mortgage is valid. The Trustee has answered the

counterclaims, raising defenses of laches, release, *res judicata*, statute of limitations, and waiver to

Warmers' counterclaims.

---

[1]     Under Section 544(a)(3), a bankruptcy trustee takes, as of the commencement of the case, the rights and
powers of a bona fide purchaser of real property from the debtor.

Hudson asserts claims in this bankruptcy estate exceeding $3,429,523.67 as a result of several loans made to the Debtors, including a loan to Balco Equities, Ltd. for $1,100,000 secured by the New Windsor Property. Hudson was granted permission to intervene in this adversary proceeding by order dated May 3, 2005. Hudson claims that Warmers' mortgage is barred by the statute of limitations, laches, waiver, estoppel, and the doctrine of release and satisfaction. By cross-claim, Hudson seeks avoidance of Warmers' mortgage and a declaration that Hudson's mortgage, not Warmers', is the first-priority mortgage.

Warmers answered the cross-claim of Hudson and asserted a cross-claim back against Hudson, seeking a declaration that (1) the Warmers mortgage is valid, (2) the Warmers are the rightful owners of the New Windsor Property, and (3) the imposition of a constructive trust over the proceeds of the New Windsor Property.

All parties to this litigation have moved for summary judgment. The Court heard oral argument on January 24, 2006; thereafter the parties submitted a joint statement of undisputed facts and completed all briefing on March 1, 2006. The Court issued an oral ruling at a hearing on March 7, 2006. As the Court ruled on March 7, 2006, the summary judgment motions are denied, and the parties shall proceed to trial on the limited issues set forth in this decision.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) ("matters concerning administration of the estate"), (b)(2)(K) ("determinations of the validity, extent and priority of liens") and (b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship").

## UNDISPUTED FACTS

The parties have agreed to the following undisputed facts in the amended Joint

Stipulation filed February 21, 2006 (ECF Docket No. 45).

## I.    THE NEW WINDSOR PROPERTY

### A. Records of the Orange County Clerk

The parties agree and stipulate that the following documents appear of record in the

office of the Orange County Clerk respecting the real property in issue, and the proceeds thereof,

being a tract consisting of four (4) lots of undeveloped land in the Town of New Windsor, New

York, comprising approximately 72 acres (the "New Windsor Property") between November 23,

1989 through and including March 31, 2004:

- Deed dated November 22, 1989, of Warmers Construction Corporation ("Warmers Construction") and Frederic[2] J. Warmers ("Mr. Warmers") (collectively, the "Warmers") to Foxwood Associates, LP ("Foxwood"), recorded December 6, 1989.

- Mortgage dated November 22, 1989, from Foxwood to the Warmers in the sum of $1,420,000.00 (the "Warmers Mortgage") recorded December 6, 1989.

- Notice of Pendency filed July 15, 1999, respecting an action in the Supreme Court of the State of New York, County of Orange, entitled "Estate of Frederic J. Warmers and Warmers Construction Corporation, Plaintiff, against Foxwood, a Limited Partnership, Defendants," bearing Index No. 4770-99 (the "Foreclosure Action").

- Summons and Verified Complaint in the Foreclosure Action filed July 15, 1999.

- Stipulation of Discontinuance with prejudice respecting the Foreclosure Action filed March 31, 2003.

- Deed of the New Windsor Property from Foxwood to Balco Equities Ltd. ("Balco") dated June 5, 2002 and recorded March 31, 2003.  The Deed by quitclaim from Foxwood to Balco recites that the conveyance was for consideration of $10,000.

- Mortgage dated September 15, 2003, from Balco to Hudson United Bank ("HUB") and National Recovery Limited Partnership in the sum of $1,100,000.00 recorded October 7, 2003.

---

[2]    In some documents the name is spelled Fredric.

**B. Documents Not of Record**

       The parties agree and stipulate that, with respect to the New Windsor Property, certain of

the following documents exist but are not of record in the office of the Orange County Clerk and

other documents do not exist, as indicated:

- Mortgage Note dated November 22, 1989, from Foxwood to the Warmers in the sum of $1,420,000.00 (the "Warmers' Note").

- Verified Answer of Foxwood served in the Foreclosure Action.

- Agreement and Stipulation of Settlement in the Foreclosure Action ("Agreement and Stipulation of Settlement"), dated in June, 2002, and signed by Foxwood, and by Donald P. Boehm, both as Executor of Warmers and as Vice President of Balco.

- General Release signed by Donald P. Boehm, as Executor and Vice President of Warmers and Balco, respectively, in favor of Foxwood dated March 6, 2003.

- The parties agree that no document, entitled "Satisfaction of Mortgage" or similarly denominated, appears of record in the office of the Orange County Clerk with respect to the Warmers Mortgage.

- The parties also agree that there is no written document executed by Balco by which it assumed the obligation under the Warmers Note.


**C. New Windsor Property**

       The parties agree and stipulate that the following facts are undisputed with respect to the

New Windsor Property:

- By deed dated November 22, 1989, the Warmers conveyed the New Windsor property to Foxwood, as indicated above.

- In consideration for the conveyance of the New Windsor Property, Foxwood made a down payment to the Warmers of $300,000 and signed the Warmers' Note for the balance of $1,420,000.

- Subsequent to the down payment of $300,000, Foxwood made the following payments of principal on the Warmers' Note to the Warmers: $75,000 on November 21, 1991; $75,000 on January 9, 1992; and $70,000 on December 30, 1992.

- Mr. Warmers signed a letter dated September 10, 1993, prepared by Foxwood, acknowledging his consent to allow Foxwood to make reduced monthly payments on the Warmers' Note of interest only from August 1, 1993 to and including April 1, 1994.

- Foxwood made reduced payments of interest on the Warmers' Note from August 1, 1993 through December, 1993.

-   Foxwood did not make any further payments of principal or interest on the Warmers' Note after December, 1993.

-   Foxwood did not pay any real estate taxes on the New Windsor property after December, 1993.

-   After December 1993, the Warmers paid the property taxes on the New Windsor Property.

-   In 1996 and 1997, Anthony Costa, representing Foxwood, and Mr. Warmers discussed entering into a settlement agreement with respect to the debt owed by Foxwood to the Warmers.

-   Mr. Warmers died December 30, 1998.

-   At the time of Mr. Warmer's death, the stock of Warmers Construction Corporation was owned by Mr. Warmers (58%), his daughter, Antonina Warmers Caston (27%) and the Antonina Warmers Caston Trust (15%).

-   At the time of Mr. Warmers death, the principal balance owed by Foxwood to the Warmers with respect to the Warmers' Note was $1,200,000.

-   The Will of Mr. Warmers appointed his nephew, Donald P. Boehm ("Boehm"), as Executor.

-   Boehm was duly appointed Executor of the Estate of Frederic J. Warmers (the "Warmers Estate"), as directed by the Last Will and Testament of Mr. Warmers, by Order of the Surrogate of Orange County, New York on or about May 20, 1999.

-   On or about July 15, 1999, Boehm, as Executor of the Warmers' Estate and on behalf of Warmers Construction Company, commenced the above-referenced Foreclosure Action.

-   On or about August 25, 1999, Foxwood served the above-referenced Verified Answer in the Foreclosure Action.

-   In connection with the Foreclosure Action in or about June 2002, the Warmers Estate, Warmers Construction and Foxwood entered into the above-referenced Agreement and Stipulation of Settlement in the Foreclosure Action.

-   Boehm, on behalf of the Warmers Estate and Warmers Construction, signed the above-referenced General Release in favor of Foxwood dated March 6, 2003.

-   In connection with the Agreement and Stipulation of Settlement, the Warmers Estate and Warmers Construction executed the above-referenced Stipulation of Discontinuance of the Foreclosure Action with prejudice, and the Stipulation of Discontinuance was filed with the Orange County Clerk on March 31, 2003.

-   On March 31, 2003, the above-referenced Deed from Foxwood to Balco was filed with the Orange County Clerk.

-   On October 7, 2003, the above-referenced Mortgage from Balco to HUB and National Recovery Limited Partnership was filed with the Orange County Clerk. Further details of this transaction are discussed below.

## II.    BALCO EQUITIES

The parties stipulate the following with respect to Balco:

- On March 31, 2004, Balco filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code in this Court.

- On December 14, 2004, the Balco bankruptcy case was converted to a case under Chapter 7 of the Bankruptcy Code.

- On December 15, 2004, Paul L. Banner was appointed as interim Chapter 7 Trustee in the Balco case, and became the Trustee on January 27, 2005.

- On March 17, 2005, this Court approved the sale of the New Windsor Property to Upstate Properties LLC for $1,500,000.00.

- The sale of the New Windsor Property to Upstate Properties LLC has been consummated, and the Chapter 7 Trustee holds the sum of $1,500,000.00 in escrow subject to further orders of this Court.

## III.    ESTATE OF FREDERIC J. WARMERS

The parties stipulate the following with respect to the Warmers Estate and matters relating

to Boehm as fiduciary and otherwise:

- As noted above, Mr. Warmers died December 30, 1998, and Boehm was appointed Executor of the Warmers Estate on or about May 20, 1999.

- After Mr. Warmers death, and with Boehm[3] in control of various Warmers' family trusts, Antonina Warmers Caston (Mr. Warmers' daughter) received little, if any, of the trust income previously relied upon.

- In May, 1999, Boehm advised Antonina Warmers Caston that he had been appointed executor and distributions would begin soon. The distribution did not occur, causing her to deplete her savings and borrow from her children.

- On December 14, 1998, Warmers Construction sold three lots to Cosimo Colandrea in the Town of Newburgh, taking back mortgages and notes totaling $180,500.

- On July 19, 2000, in connection with the mortgage of Warmers Construction to Cosimo Colandrea, Boehm gave Cosimo Colandrea a Satisfaction of the Mortgages and accepted a discounted lump sum payment of $130,000, which Boehm did not mention in his Surrogate's Court accounting.

- On April 18, 2000, Boehm sold two lots totaling 129 acres on Wells Road in the Town of Newburgh for $550,000, of which the Warmers Estate owned 30%, and reported the proceeds in his Surrogate's Court accounting as $36,000.

---

[3]      Although the parties agree to these allegations concerning Donald Boehm, Mr. Boehm is not a party to this adversary proceeding, and no findings by the Court as part of this adversary proceeding will be binding upon Mr. Boehm.

- In or about April, 2000, Boehm reneged on the promise to pay funds from Antonina Warmers Caston's own trust, of which Boehm was the Trustee, to close on a house.

- In August, 2000, Antonina Warmers Caston, as successor trustee to the Dolores Von Gerichten Trust, loaned the Warmers Estate $100,000.00 at the request of Boehm with assurance it would be repaid, but it never was.

- Boehm acquired Mr. Warmers' residence on Orange Lake by Deed recorded January 22, 2001, in the Orange County Clerk's Office.

- By November, 2002, Antonina Gibney-Campbell (Mr. Warmers' granddaughter) was convinced Boehm "was not acting honorably" and asked the Surrogate Court to remove him as Executor; her attorney then filed papers to have Boehm removed for cause.

- In 2003 (the parties do not stipulate to the month), Antonina Warmers Caston complained about Boehm to the Attorney General's office and the District Attorney.

- Donald Boehm was removed as Executor of the Estate of Frederic J. Warmers, for cause, by Order of the Surrogate of Orange County on November 19, 2003.

- Antonia Gibney-Campbell qualified as Temporary Administratrix CTA and Temporary Trustee of the Estate of Frederic J. Warmers on December 10, 2003, and as permanent Executrix on May 6, 2004.

- Boehm filed an accounting dated March 8, 2004, in the Surrogate's Court, under Citation dated August 31, 2004.

- Boehm did not mention in his accounting the New Windsor Property, the 1989 Warmers Note, or the transfer of the New Windsor Property to Balco.

- Boehm did not receive approval from the Orange County Surrogate's Court for the above-referenced settlement of the Foreclosure Action.

- Boehm did not receive approval from the Orange County Surrogate's Court for the conveyance of the New Windsor Property from Foxwood to Balco.

- Boehm did not notify the Orange County Surrogate's Court of the settlement with Foxwood, or the conveyance of the New Windsor Property from Foxwood to Balco, or the release of Foxwood.

- Boehm did not account to the Surrogate's Court for the conveyance of the New Windsor Property to Balco.


## IV.    HUDSON UNITED BANK

The parties stipulate the following events with respect to Hudson United Bank ("HUB"),

leading up to and culminating with HUB's Mortgage on the New Windsor Property:

- In or about February, 2003, an entity known as Sarah Enterprises International, Ltd. ("Sarah") defaulted on a loan indebtedness to HUB in the principal amount of $1,100,000, which Boehm had personally guaranteed.

- In or about March, 2003, an entity known as Haddon Holdings Ltd. ("Haddon") defaulted on a loan owed to Bombardier Corporation ("Bombardier") in the principal amount of $500,000, which Boehm had personally guaranteed.

- Sarah is wholly-owned by Haddon and Haddon is wholly-owned by Balco.

- HUB purchased Bombardier's loan in April, 2003, to protect HUB's junior mortgage in the collateral.

- HUB conducted several workout discussions with Boehm between February and September, 2003, to restructure the debts owed by Haddon and Sarah to HUB. These discussions included posting the New Windsor Property as additional collateral. The Court notes that it was during this time period that the deed of the New Windsor Property from Foxwood to Balco was recorded, although the Agreement and Stipulation of Settlement was entered into earlier, in June 2002.

- Timothy J. Matteson, a Vice President of HUB, prior to closing on a debt restructure, asked his paralegal to order a title search and policy regarding the New Windsor Property.

- HUB received a title policy with respect to the New Windsor Property.

- HUB received letters from Nash Galli, President of Clear Abstract, dated April 16, 2003 and December 9, 2004.

- Mr. Galli of Clear Abstract also had acted as the escrow agent in connection with the Agreement and Stipulation of Settlement between the Warmers Estate, Warmers Construction and Foxwood, and also took on the responsibility of holding the documents and filing them with the Orange County Clerk.

- A Forbearance Agreement dated September 15, 2003 was entered into between HUB and Haddon, Sarah, Balco and others (the "Forbearance Agreement"), under which Balco granted a $1,100,000 mortgage on the New Windsor Property to HUB to secure Balco's guaranty of all debt obligations owing by Haddon and Sarah to HUB, and a $700,000 new commercial credit line advanced by HUB to Balco, which was memorialized by a Note dated September 15, 2003 (the "HUB-Balco Note").

- The closing date of the HUB-Balco Note and the Forbearance Agreement was September 23, 2003.

- Nancy Cook, President and Secretary of Balco, executed an Affidavit of Title, at the closing.

## DISCUSSION

### Standards for Granting Summary Judgment

Pursuant to Rule 56(c), incorporated by Bankruptcy Rule 7056(c), summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Id.*, 477 U.S. at 322-23. When ruling upon cross-motions for summary judgment, the court must evaluate each motion separately and must draw all reasonable inferences against the party whose motion is under consideration. *See Coach, Inc. v. Peters*, 386 F. Supp.2d 495, 497 (S.D.N.Y. 2005).

### Statute of Limitations

The Trustee and Hudson argue that the Statute of Limitations bars suit on the Warmers Mortgage.

The Trustee argues that the Warmers Note (the promissory note from Foxwood to Warmers) matured November 22, 1992 and, unless extended, an action on a mortgage of real property must be commenced within six years after the cause of action has accrued under New York's Civil Practice Law and Rules ("CPLR") § 213(4). The cause of action accrues, and period begins to run, on the date specified in the mortgage for final payment of the debt. Under the terms of the Warmers Mortgage, the cause of action on the Warmers Mortgage would have expired on November 22, 1998, prior to Mr. Warmer's death in the next month, unless extended.

Warmers argues that the cause of action under the Warmers Mortgage was extended through at least December 31, 1999, which would mean that the Foreclosure Action was timely commenced on July 15, 1999.

Warmers cites to the September 10, 2003 letter and the fact (as jointly agreed by the parties) that Foxwood made reduced payments of interest on the Warmers' Note from August 1, 1993 through December, 1993. The September 10, 2003 letter is addressed to Mr. Warmers from Ross L. McKersie, President of Empire State Thrift Service Corporation ("ESTS") and submitted on ESTS letterhead; however, the parties do not dispute that by this letter Foxwood offered and Warmers consented to allow reduced monthly payments on Warmers Note of interest only from August 1, 1993 through April 1, 1994. The body of the letter from Foxwood states in full:

> Dear Fred:
>
> My Board agreed to your proposed compromise. As such, I have enclosed a check for $5,600 representing the August 1st and September 1st payment on the estate portion of the interest (i.e. $2,800 per month).
>
> As you and I discussed, in order to keep this project moving, you will agree to forgive your share of the interest of $5,200 per month from August 1, 1993 to and including April 1, 1994.
>
> Please acknowledge below your receipt of the $5,600 check bringing the loan current and your confirmation on the forgiveness of $5,200 per month interest for the 9 months indicated above.
>
> Please return a signed copy to me as soon as possible.

(emphasis added).

Under New York's General Obligations Law ("G.O.L.") § 17-105(1), the statute of limitations can only be extended by a written agreement made after accrual of the cause of action and signed by the party to be charged. Such writing will be effective, "subject to any conditions expressed in the writing, to make the time limited for commencement of the action run from the date of the waiver or promise."

The Trustee submits that the conditions in G.O.L. 17-105(1) do not exist.  Construing

G.O.L. 17-105(1), the New York Court of Appeals has held: "In order that a part payment shall

have the effect of tolling a time-limitation period, under the statute or pursuant to contract, it

must be shown that there was a payment of a portion of an admitted debt, made and accepted as

such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment

by the debtor of more being due, from which a promise may be inferred to pay the remainder."

*Lew Morris Demolition Co., Inc. v. Board of Ed. of City of New York*, 40 N.Y.2d 516, 521, 355

N.E.2d 369, 371, 387 N.Y.S.2d 409, 411 (1976) (citations omitted).

The Court believes that the September 10, 2003 letter, combined with interest payments

by Foxwood from August 1, 1993 through December 1993 in accordance with that letter

agreement, extended the statute of limitations on the Warmers Mortgage through December

1993.  A similar case is *Chemical Fin. Servs. Corp. v. Zagaro*, 173 Misc.2d 745, 747, 661

N.Y.S.2d 926, 927 (N.Y. Sup. Ct. 1997).  In *Zagaro* the court found that where the defendants

continuously made monthly payments for over three years and "were clearly aware that

additional payments were required to pay off the balance of the promissory note" a promise

could be "inferred that the defendants would pay the balance of the loan" so that the statute of

limitations was tolled.  In the present case, the September 10, 2003 letter plainly acknowledges a

desire to "bring[] the loan current," and from this acknowledgement, and the subsequent interest

payments, a promise to repay the remainder of the Warmers Mortgage can be inferred.

The Foreclosure Action was therefore timely commenced.

**Settlement and Release**

Even if the statute of limitations does not bar enforcement of the Warmers Mortgage, the

Trustee and Hudson argue that the settlement and release between Foxwood and the Warmers

Estate in June 2002 released the Warmers Mortgage and dismissed the foreclosure action with prejudice and that any subsequent foreclosure action would be barred by the statute of limitations. The Trustee argues that the dismissal is an adjudication upon the merits, and a subsequent action to enforce the Warmers Mortgage would be barred by *res judicata* and collateral estoppel. Warmers claims that the Warmers Mortgage is an "open mortgage" that was never satisfied and points to the fact that no "satisfaction of mortgage" document was ever recorded. Warmers contends that "[t]he parties intentionally chose to keep the mortgage alive by not preparing or filing a satisfaction of the mortgage" and posits that this would have favorable tax consequences to the parties. Affidavit of Michael J. Matsler in support of Warmers' motion for summary judgment, p. 3, ¶7.

The arguments of the Trustee and Hudson presuppose that the Agreement and Stipulation of Settlement and the transfers it contemplated as consideration could not be unwound as a fraudulent conveyance. The Agreement and Stipulation of Settlement between Foxwood and Warmers, and the conveyance of the New Windsor Property to Balco were part of the same transaction in which the Foreclosure Action was resolved by the Stipulation of Discontinuance.

In the Agreement and Stipulation of Settlement, the $1,420,00 mortgage in favor of Warmers was resolved by conveyance of the New Windsor Property to Balco for $10,000. The reality of the settlement was to transfer the New Windsor Property from Foxwood to an entity controlled by Donald Boehm, for $10,000. Foxwood got $10,000 which it paid to Warmers for a general release. The release of the $1,420,000 Warmers Mortgage for consideration of $10,000 may have been a fraudulent conveyance.

Under Section 273 of New York's Debtor and Creditor Law ("DCL"),

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his

actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

A release, such as the release of the Warmers Mortgage, is a type of "Conveyance" listed in DCL § 270. The term "creditor" is defined in Section § 270 as "[a] person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent," and creditor status arises at the time the claim accrues. *See Hassett v. Goetzmann*, 217 B.R. 9, 16 (N.D.N.Y. 1998).

DCL § 271 provides:

> 1. A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

DCL § 272 provides:

> Fair consideration is given for property, or obligation,
>
> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

DCL § 278 provides:

> Rights of creditors whose claims have matured
>
> 1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> a. <u>Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim</u>, or
>
> b. Disregard the conveyance and attach or levy execution upon the property conveyed.
>
> 2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.

(emphasis added).

If the Agreement and Stipulation of Settlement, including Warmers' release as to

Foxwoods, is avoided as a fraudulent transaction, but for Balco's bankruptcy filing, the effect

would be the rescission of the Stipulation of Discontinuance and the restoration of the

Foreclosure Action (because it was improperly discontinued in the Agreement and Stipulation of

Settlement) to permit foreclosure on the Warmers Mortgage.  Since the Windsor Property has

been sold in Balco's Bankruptcy case pursuant to a sale under 11 U.S.C. § 363, the practical

effect would be to give a first-position lien to Warmers on the proceeds of the New Windsor

Property.  In other words, the avoidance of the release of the Warmers Mortgage as a fraudulent

conveyance requires the unwinding of the Stipulation of Discontinuance, including the transfer

of the New Windsor Property from Foxwood to Balco.  One necessarily unwinds the other.

Subject to the discussion in the remainder of this decision, Warmers is entitled to an

evidentiary hearing in this Court to determine whether the Agreement and Stipulation of

Settlement (and the transfers in connection with it) is avoidable as a fraudulent conveyance.

Evidence may be submitted to prove or disprove the elements of DCL § 273, or other relevant

provisions of the DCL, as set forth above.

**Trustee's "Strong-Arm" Status, as Bona-Fide Purchaser**

The Trustee relies on Bankruptcy Code Section 544(a)(3) which gives the Trustee the

right, as of the commencement of the bankruptcy case, and without regard to any knowledge of

the Trustee or of any creditor, all the rights and powers of a bona-fide purchaser of real property

from the debtor.

The Trustee also cites to various provisions of New York law that protect a bona-fide

purchaser: New York Real Property Law ("RPL") § 266 (which states that the title of a purchaser

for consideration is not affected unless the purchaser had prior notice of fraud) and RPL § 291

(stating that a bona-fide purchaser of real property takes free of <u>unrecorded</u> interests) and New

York's Estates Powers and Trusts Law ("<u>E.P.T.L.</u>") § 7-3.2 (which states that an express,

implied or resulting trust not declared in the disposition from the trustee to purchaser for value

does not defeat the title of the purchaser or of a creditor who extended credit to trustee on

reliance upon trustee's apparent ownership of the property). [4]

> In New York, a bona fide purchaser must have purchased the property in good
> faith without notice and for valuable consideration.  Under New York law, such
> notice consists of actual notice and constructive notice of what may be revealed
> by (1) an examination of the record, (2) reasonable inquiry of those in actual
> possession, or (3) reasonable inquiry on the basis of all circumstances. Section
> 544(a) provides, however, that the trustee's or debtor-in-possession's actual
> knowledge is not a consideration, <u>but the trustee or debtor-in-possession is subject
> to constructive notice</u>.

*In re Mosello*, 193 B.R. 147, 151 (S.D.N.Y. 1996) (emphasis added) (citations and internal quotations

omitted).

> Although Code § 544(a)(3) elevates a trustee to the status of a bona fide purchaser
> even if the debtor had actual knowledge of an adverse interest, it does not clothe a
> trustee with this protective mantle if there was no way, under the applicable state
> law, that anyone could attain the status of a bona fide purchaser. "Where there are
> matters of record giving constructive notice of a competing interest because, for
> example, of proper filing, a pending divorce proceeding, or an inquiry notice of a
> prior claim, the trustee is precluded from using the avoiding powers." 5 Collier on
> Bankruptcy ¶ 544.08, 544-7 (15th ed. 1997). Under Code § 544(a)(3),
> constructive notice is imputed to a hypothetical purchaser. *See e.g., McCannon v.
> Marston*, 679 F.2d 13, 16 (3rd Cir.1982); *In re Minton Group*, 27 B.R. 385, 388
> (Bankr.S.D.N.Y.1983).

> "As a hypothetical bona fide purchaser, the trustee under this subsection is
> deemed to have conducted a title search, paid value for the property and perfected
> its interest as a legal title holder as of the date of the commencement of the case.
> The trustee can exercise rights as a bona fide purchaser at the time of the
> commencement of the case regardless of actual knowledge. However, the
> trustee's right as a bona fide purchaser does not override state recording statutes
> and permit avoidance of any interest of which a trustee would have had

---

[4]        E.P.T.L § 7-3.2 states: "An express trust not declared in the disposition to the trustee or an implied or
resulting trust does not defeat the title of a purchaser from the trustee for value and without notice of the trust, or the
rights of a creditor who extended credit to the trustee in reliance upon his apparent ownership of the trust property."
The release of the Warmers Mortgage is neither a "transfer of title to a purchaser for value" or an extension of credit
by Boehm as trustee of the Warmers Estate.  HUB loaned money to Balco, not the Warmers Estate.

05-09005-cgm    Doc 56    Filed 03/29/06    Entered 03/29/06 16:17:56    Main Document
Pg 17 of 24
constructive notice under state law. Thus, a trustee generally can avoid an
unrecorded transfer of land, but not after having been put on constructive notice
or inquiry of a prior claim." 5 Collier on Bankruptcy ¶ 544.08, 544-14 through
544-15 (15th ed.1997).

*In re Borison*, 226 B.R. 779, 787 (Bankr. S.D.N.Y. 1998). Thus, notwithstanding Section

544(a)(3), a Chapter 7 Trustee may be charged with constructive notice of matters of

record, such as a properly recorded mortgage.

The Trustee claims that the records of the Orange County Clerk are devoid of any notice

that the conveyance of the New Windsor Property from Foxwood to Balco was fraudulent. The

Trustee may be correct.[5]  However, Warmers claims that the Trustee cannot be considered a

bona-fide purchaser since "the existence of record of the 1989 Warmers mortgage creates a duty

of inquiry . . . and prevents the trustee from invoking the powers of a bona fide purchaser since

the recorded instrument creates a potential cloud on title." Warmers' Memo of Law in Support of

Motion for Summary Judgment, p. 18 (citations omitted). Warmers also argues that in New

York there is a presumption that duly recorded mortgages remain viable and open.

As the parties agree in the Joint Stipulation: "no document, entitled 'Satisfaction of

Mortgage' or similarly denominated, appears of record in the office of the Orange County Clerk

with respect to the Warmers' Mortgage." As the Warmers Mortgage was not extinguished, the

---

[5]    The Court notes that at least one New York court has held:

It is only if the facts within the knowledge of the purchaser are of such a nature, as, in reason, to
put him upon inquiry, and to excite the suspicion of an ordinarily prudent person and he fails to
make some investigation, [that] he will be chargeable with that knowledge which a reasonable
inquiry, as suggested by the facts, would have revealed. In our view, a transfer without
consideration, designated as a gift, from a mother to her daughters, is not one to excite the
suspicion of an ordinarily prudent person. *Miner v. Edwards*, 221 A.D.2d 934, 935, 634 N.Y.S.2d
306 (N.Y. App. Div. 4th Dep't 1995) (citations and internal quotations omitted).

It is possible that the deed of the New Windsor Property from Foxwood to Balco for $10,000, like the conveyance in
*Miner v. Evans*, would not reasonably arouse the Trustee's suspicion. The Court makes no finding at this time and
will consider further briefing on the issue. It is also possible that the facts in *Miner v. Evans* could be distinguished.

- 17 -

Trustee had a duty[6] to investigate the status of the Warmers Mortgage.  Reliance on the

Stipulation of Discontinuance was not sufficient under New York law.  New York's Real

Property Actions and Procedures Law ("RPAPL") § 1921 sets forth the steps that must be

followed by the mortgagor or "any other person interested in the mortgaged premises" in order to

have the mortgage marked canceled and discharged of record where the mortgage has been

satisfied.  RPAPL § 1501(4) sets forth the process that must be followed to remove a mortgage

of record where, as here, the parties have argued that the statute of limitations on a mortgage has

run:

> 4. Where the period allowed by the applicable statute of limitation for the
> commencement of an action to foreclose a mortgage, or to enforce a vendor's
> lien, has expired, any person having an estate or interest in the real property
> subject to such encumbrance may maintain an action against any other person or
> persons, known or unknown, including one under disability as hereinafter
> specified, to secure the cancellation and discharge of record of such encumbrance,
> and to adjudge the estate or interest of the plaintiff in such real property to be free
> therefrom; provided, however, that no such action shall be maintainable in any
> case where the mortgagee, holder of the vendor's lien, or the successor of either
> of them shall be in possession of the affected real property at the time of the
> commencement of the action. In any action brought under this section it shall be
> immaterial whether the debt upon which the mortgage or lien was based has, or
> has not, been paid; and also whether the mortgage in question was, or was not,
> given to secure a part of the purchase price.

Thus, although potentially or even apparently expired or discharged, the Warmers Mortgage

remained as a mortgage of record with the Orange County Clerk.  As such, HUB and Trustee

took their interests subject to any legal effect of the Warmers Mortgage. "A subsequent

purchaser of real property having actual or constructive notice of the prior rights of another in the

property is disqualified from obtaining the status of a bona fide purchaser." *Swope v. Washington*

*Mutual Home Loans, Inc. (In re Johnston)*, 333 B.R. 724, 732-33 (Bankr. W.D. Pa. 2005).

---

[6]    This statement does not suggest (and no party has alleged) that the Trustee has failed in any duty or
committed any omission that waived bona-fide purchaser status.  The court's reference to a duty to investigate is
merely a way of describing the legal status of the defense of the estate, and a trustee's entitlement to raise the
defense in order to avoid a lien.

Under the facts in *Johnston*, Bankruptcy Judge Bernard Markovitz held that even though the mortgage in that case was not enforceable, the mortgage could not be avoided on the basis of the trustee's status as a bona-fide purchaser under Section 544(a)(3) because the Chapter 7 trustee had constructive notice of the mortgage.

This is not to say that evidence of a potential fraudulent conveyance would have been evident from an examination of the documents recorded with the Orange County Clerk.  The Stipulation of Discontinuance is a one-page document signed by attorneys for Warmers and Foxwood wherein those parties agreed that the foreclosure action "be, and the same hereby is discontinued with prejudice and without costs, disbursements or attorneys fees."  The terms of the Agreement and Stipulation of Settlement are not recited in the Stipulation of Discontinuance, and the Agreement and Stipulation of Settlement was not filed with the Orange County Clerk.

The evidence of a potential fraudulent conveyance is suggested by the Agreement and Stipulation of Settlement.  It is the Agreement and Stipulation of Settlement that provided for execution of the Stipulation of Discontinuance that filed with the Orange County Clerk, as well as the Deed of the New Windsor Property from Foxwood to Balco.  The Agreement and Stipulation of Settlement provides the following:

- That the parties to the stipulation have requested that Foxwood "tender a Quitclaim Deed to Balco Equities, Ltd. conveying any right, title and interest it may hold to the [New Windsor Property]" in consideration for payment of $10,000 from Balco to Foxwood.

- The New Windsor Property was transferred and acquired "in an 'AS IS' condition and state and Balco Equities, Ltd. shall take title subject to any outstanding liens, taxes, assessments, encumbrances, easements, rights interest and/or mortgages of record, if any."

- Foxwood and Balco agreed not to report the transaction as a forgiveness of indebtedness to the Internal Revenue Service or New York State taxing authority.

The Agreement and Stipulation of Settlement was signed by Donald P. Boehm on behalf of the "Estate of Fredric Warmers".

The Agreement and Stipulation of Settlement was not recorded, and in reviewing the documents filed with the Orange County Clerk the Trustee would only would have seen (1) the Foreclosure Action and notice of pendency, (2) the Stipulation of Discontinuance and (3) the deed from Foxwood to Balco. But, as discussed above, the Trustee's duty to investigate whether the Warmers Mortgage remained enforceable would have inevitably lead to discovery of the Agreement and Stipulation of Settlement.

In *Fairmont Funding, Ltd. v. Stefansky*, 301 A.D.2d 562, 754 N.Y.S.2d 54 (N.Y. App. Div. 2d Dep't 2003), bona-fide purchaser status was denied as to an existing, recorded lien where the title searcher erroneously concluded that the previous mortgage has been consolidated and ultimately released. The puchaser was charged with constructive notice of the mortgage and was "chargeable with the duty to make further inquiry to determine whether the lien had been satisfied or released." *Id.* 301 A.D.2d at 564. The court in *Fairmont* noted: "The intended purchaser must be presumed to have investigated the title, and to have examined every deed or instrument properly recorded, and to have known every fact disclosed <u>or to which an inquiry suggested by the record would have led</u>." *Id.* (emphasis added).

In this case, because (as the parties have agreed) "no document, entitled 'Satisfaction of Mortgage' or similarly denominated, appears of record in the office of the Orange County Clerk with respect to the Warmers' Mortgage," the Trustee's duty to investigate the Warmers Mortgage beyond the records filed with the Orange County Clerk bars the use of the strong-arm powers in Section 544(a)(3) to obtain a superior position to the Warmers Mortgage. Under New York law, constructive knowledge consists of an examination of the record and "reasonable inquiry on the basis of all the circumstances." *In re Euro-Swiss Intern. Corp.*, 33 B.R. 872, 882 (Bankr. S.D.N.Y. 1983). The Warmers Mortgage was a mortgage of record, and this by

itself defeated the Trustee's bona-fide purchaser status as to the Warmers Mortgage. Moreover, the Warmers Mortgage and other circumstances of record gave rise to the need for further investigation, and this may have lead to evidence of a potential fraudulent conveyance claim arising from the release of the Warmers Mortgage as part of the Agreement and Stipulation of Settlement.

## Hudson's Status as Bona Fide Purchaser

The foregoing discussion regarding constructive notice applies equally to the Trustee and Hudson. Moreover, although the Trustee can rely on bona-fide purchaser status under Section 544, Hudson cannot.

As to Hudson, Warmers raises many additional issues that challenge Hudson's bona-fide status and offers extensive arguments concerning Hudson's alleged "failure to inquire into the true state of title, which is an inexcusable breach of its own routine, prudent lending practices." Warmers' "Memorandum of Law in Reply to HUB's Motion for Summary Judgment," p. 3. Warmers argues that Hudson would have seen the Warmers Mortgage on a formal title report, except that Hudson relied on a summary of the title report, in deviation from its standard practices. Hudson forcefully disputes Warmers' claims, and these issues must be resolved at trial, if that issue is reached. At trial the Court will probably focus on whether the release of the Warmers' Mortgage in the Agreement and Stipulation of Settlement is a fraudulent conveyance. If the Court finds in the affirmative, since the Court has already found that the Trustee and Hudson had constructive notice of the Warmers Mortgage, the dispute over whether Hudson failed to make proper inquires will be moot.

E.    **Constructive Trust Arguments**

Warmers argues that the New Windsor Property is not property of bankruptcy estate

because a constructive trust should be imposed on the property.  Warmers also reasons that

Section 544(a)(3) would not allow the Trustee to avoid a constructive trust imposed on property,

and that the property of a debtor's estate does not include property of others held in a

constructive trust.  Hudson and the Trustee argue against the imposition of a constructive trust.

> Bankruptcy Code Section 541(d) states that property of the estate does not include:
>
> Property in which the debtor holds, as of the commencement of the case, only
> legal title and not an equitable interest, such as a mortgage secured by real
> property, or an interest in such a mortgage, sold by the debtor but as to which the
> debtor retains legal title to service or supervise the servicing of such mortgage or
> interest, becomes property of the estate under subsection (a)(1) or (2) of this
> section only to the extent of the debtor's legal title to such property, but not to the
> extent of any equitable interest in such property that the debtor does not hold.

In most cases, a constructive trust will not prevail over the Trustee's strong-arm powers under

Section 544(a)(3) of the Bankruptcy Code.  *See, e.g., In re Minton Group, Inc.*  28 B.R. 774,

788 (Bankr. S.D.N.Y. 1983) (Schwartzberg, J.) ("Even if the defendants were able to establish

that under Connecticut law they held recognizable equitable interests, either by virtue of a

resulting or a constructive trust, the trustee, nevertheless, possesses superior rights under Code §

544(a)(3) as a hypothetical bona fide purchaser of real property from the debtor at the time of the

commencement of the case, whether or not such a purchaser exists."); *see also In re Stuckey*, 126

B.R. 697, 701 (Bankr. E.D. Va. 1990) (chapter 7 trustee holding status of bona-fide purchaser

under Section 544(a)(3) has standing to defeat a creditor's attempt to avoid a fraudulent

conveyance).  However, because the Court has ruled that the Trustee cannot rely on his strong-

arm powers at least to the extent of challenging the Warmers Mortgage, it is not clear that the

Section 544(a)(3) powers can be utilized in this case to defeat a claim by Warmers for

constructive trust.  Based on the Court's other rulings in this decision, the constructive trust issue

is not reached at this time, and summary judgment is not appropriate.

### F.    Laches and Other Equitable Arguments

Both Hudson and the Trustee argue that even if the facts in this case supported a

constructive trust, the equitable doctrine of laches would bar imposition of a constructive trust.

The Trustee alleges that Warmers suspected Boehm's fraud as early as 2000, and there was time

to act before conveyance of the New Windsor Property to Hudson and the bankruptcy filing of

Balco.  Thus, Hudson and the Trustee argue, the imposition of a constructive trust, which is an

equitable remedy, would be inequitable to other, innocent creditors of the debtor.  The laches

arguments asserted by Hudson and the Trustee are offered as a defense to Warmers' claim for a

constructive trust.  Because the Court does not now reach Warmers' constructive trust claim, it

also does not consider any defenses to it that might be asserted.

### CONCLUSION / PROCEDURE AT TRIAL

In the Court's view, it will be most efficient to bifurcate the trial.  The Court has noted in

this decision some evidence of a potential fraudulent conveyance action is suggested by the

Agreement and Stipulation of Settlement.  This is not a conclusion that the Court is prepared to

make until after the submission of evidence at trial.  If the Court rules in Warmers' favor on the

fraudulent conveyance issue, Warmers' constructive trust claim, and the defenses raised by the

Trustee and Hudson to that claim, would be moot.

If the Court does not find in favor of Warmers on the fraudulent conveyance issue,

evidence of a constructive trust will become relevant, necessitating a second trial stage.  During

the second stage of trial, the Court would hear evidence on Warmers' constructive trust claim,

together with the laches defense and other equitable arguments raised by the Trustee and Hudson

in opposition to the constructive trust claim.

Counsel for Warmers is requested to submit an order denying the motions for summary

judgment.  The parties are directed to return June 13, 2006 at 11:30 a.m. for a further pre-trial

conference.  Meanwhile, in preparation for trial, the parties should work together to prepare and

submit a joint pre-trial order (setting forth the issues to be tried, consistent with this decision and

the court's oral ruling on March 7, 2006) and exchange exhibits and witness lists.


Dated:  Poughkeepsie, New York
        March 28, 2006

                                        ___/s/ Cecelia Morris_____
                                              U.S.B.J.